UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

    Darrell Raifeld VandenBush,                Case No. 18-31066-beh

           Debtor.                                    Chapter 7

CQM, Inc. and
Ambrosious Development, LLC,

           Plaintiffs,

v.                                                           Adversary No. 19-02041-beh

Darrell Raifeld VandenBush,

           Defendant.

**DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

      Sometimes courts must state what is plain, as in, there is no marital property when there is no marriage. Here, the plaintiffs hold a sizeable judgment for fraud committed by the debtor's ex-wife. The plaintiffs settled their fraud case with the ex-wife, a former employee who pled no contest, along with the debtor who agreed at the time that the judgment could be satisfied from marital assets. But a little over a year later, the debtor and the fraudster divorced, and under their marital settlement agreement, the ex-wife fraudster retained all liability for the state court judgment. The debtor later filed for bankruptcy. This unsatisfying course of events prompted the plaintiffs to file an adversary case, seeking to collect their $772,000 judgment against the debtor from "marital property" via a non-dischargeability claim. But because there is no dispute that the debtor did not commit the underlying fraud, and post-divorce there can be no "marital assets," the Code offers no relief to these plaintiffs.

## PROCEDURAL BACKGROUND AND JURISDICTION

Creditor-plaintiffs CQM, Inc. and Ambrosious Development, LLC, hold a $772,000 judgment against debtor Darrell VandenBush's ex-wife, Laurie VandenBush, and seek to preserve their ability to collect the judgment debt against the former marital property that Mr. VandenBush received in the parties' divorce. The plaintiffs have requested a determination that the judgment debt is non-dischargeable as to Mr. VandenBush under 11 U.S.C. §§ 523(a)(2)(A) and (a)(15). The debtor disputes that he owes a debt to the plaintiffs and asserts that even if he does, it (1) is dischargeable and (2) cannot be satisfied from what are now his individual assets. The plaintiffs have moved for summary judgment on their claim under § 523(a)(2)(A), and the debtor has cross-moved for summary judgment on both causes of action under §§ 523(a)(2)(A) and (a)(15).

For the reasons explained below, the Court will deny the plaintiffs' motion for summary judgment and grant the debtor's cross-motion for summary judgment in full.

The Court has jurisdiction under 28 U.S.C. § 1334 and the Eastern District of Wisconsin's July 16, 1984, order of reference entered under 28 U.S.C. § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I). This decision constitutes the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052.

## UNDISPUTED FACTS

The following facts, taken from the complaint, answer, and the parties' briefing and affidavits, are either undisputed or not reasonably subject to genuine dispute.

### A. The 2014 State Court Civil Suit

Debtor Darrell VandenBush previously was married to Laurie VandenBush. Laurie was employed by plaintiff CQM as a bookkeeper and office manager from approximately 1993 until her termination on October 15, 2014.

On November 4, 2014, plaintiffs CQM and Ambrosius Development filed a complaint in Brown County Circuit Court against both Darrell and Laurie VandenBush (among others), Case No. 14-CV-1595. In the state court complaint, CQM and Ambrosius Development alleged that, between the years of 2008 and 2014 (during which Darrell and Laurie were married), Laurie issued checks without authorization from the plaintiffs' financial accounts to herself, her daughter, and third parties as payment for her personal liabilities and loans. CQM and Ambrosius asserted several causes of action against the VandenBushes, including (1) conversion against Laurie VandenBush; (2) theft by fraud against Laurie VandenBush; (3) breach of fiduciary duty against Laurie VandenBush; and (4) a request for a declaratory judgment against Darrell VandenBush (seeking a declaration that Darrell could not maintain a marital property interest in any property or assets acquired with the money that Laurie allegedly misappropriated from the plaintiffs).

The VandenBushes and the plaintiffs ultimately entered into a stipulation in which the parties agreed that "judgment shall be entered against Laurie A. Vandenbush in the amount of $700,000 for theft by fraud, together with costs of investigation and litigation . . . in the amount of $72,000.00." The stipulation further provided: "Darrell R. VandenBush agrees that plaintiffs' claims against Laurie A. Vandenbush constitute a marital obligation of said defendants and marital assets are subject to execution to satisfy plaintiffs' judgment."

Both Laurie and Darrell VandenBush each signed the stipulation individually on January 23, 2016. The state court signed an order for judgment pursuant to the stipulation on February 1, 2016, and judgment was entered on February 9, 2016.

B.  **The 2015 State Court Criminal Suit**

Before the civil judgment was entered, in April 2015, the State of Wisconsin filed a criminal complaint against Laurie VandenBush in Brown County, Case No. 15-CF-601, charging Laurie with six crimes: (1) theft by

employee; (2) forgery; (3) three counts of unauthorized use of an entity's identifying information or documents (identity theft); and (4) credit fraud—use to defraud.

In October 2015, Laurie pled no contest to four of the six counts against her (theft by employee, forgery, one count of identity theft, and credit fraud). A judgment of conviction, including a prison sentence, and order for restitution on those counts was entered in February 2016.

**C.    The Divorce**

In April 2017, Darrell and Laurie VandenBush were divorced pursuant to a marital settlement agreement ("MSA") and judgment of divorce entered in Brown County Case No. 16-FA-781.

In the MSA, which was incorporated as the judgment of the court, the parties agreed that Laurie VandenBush "committed marital waste and greatly decreased the value of the marital estate," adding: "The Petitioner [Darrell] is also assuming all of the parties' marital debts. The Respondent's [Laurie's] debt to CQM Inc. is not a marital debt as it was not incurred for a marital purpose." The parties then were awarded the following property:

**Petitioner**

1. Household items and personal effects in his possession at the time of trial
2. Property located at 468 S. New Franken Road, Green Bay, WI 54311-9565
3. Life insurance policies in his name and cash surrender values, if any.
4. 2004 Chevy 2500 Pick Up
5. 1996 Ford F350 Pick Up
6. 2008 Cadillac CTE
7. Cash and deposit accounts in his name.
8. Fox Hills Resort Timeshare
9. 1845C Skid Loader
10. 2910 Kabota Tractor
11. John Deere 336 Baler
12. Case 1070 Tractor
13. Case 1030 Tractor
14. John Deere Side Rake
15. Two 18' Hay Racks
16. 32' Elevator
17. 250 Linken Welder
18. Coat 40-40 Tire Changer
19. Hand Tools

**Respondent**

1. Her household items and personal effects. She shall obtain her personal property from the petitioner upon her release from prison.
2. Life insurance policies in her name and cash surrender values, if any.
3. Cash and deposit accounts in her name.
4. Her horse.

*See* MSA section V.A, ECF Doc. No. 22-6, at 2.

The MSA included the following provision regarding the parties' debts and financial obligations:

A. Each of the parties shall be responsible for the following debts and liabilities, and each shall hold the other harmless for the payment thereof:

| Creditor's Name and Address | For | Current Balance | Monthly Payment | Responsible Party |
|---|---|---|---|---|
| Greenstone Farm | Mortgage | $296,446.29 | $1,707.58 | Husband |
| Forefront Dermatology | Medical | $571.95 | Due Now | Husband |
| Lyons Health | Medical | $489.05 | Due Now | Husband |
| Community First CU | Vehicle Loan | $7,234.00 | $648.44 | Husband |
| Capital One | Credit Card | $1,469.69 | $30.00 | Husband |
| Capital One | Credit Card | $9,934.07 | $239.00 | Husband |
| Fleet Farm | Credit Card | $7,975.47 | $280.00 | Husband |
| Kohl's | Credit Card | $816.94 | $27.00 | Husband |
| WDOR | Taxes | $7,052.35 | 10% of gross | Husband |
| Brown County | 2015 Property Taxes | $3,634.79 | $300.00 | Husband |
| Brown County | 2016 Property Taxes | $3,980.21 | $300.00 | Husband |
| YP Holdings (Rauch-Milliken International, Debt Collector) | Collections | $977.96 | Due Now | Husband |
| Fox Hills Owner's Association | Timeshare | $1,046.00 | Due Now | Husband |
| CQM, Inc. | Restitution | $767,757.36 | | Wife |

*See* MSA section VI.A, ECF Doc. No. 22-6, at 3.

**D.   CQM's Attempt at Execution and the Debtor's Bankruptcy Filing**

On November 7, 2018, the plaintiffs filed a Petition for Writ of Execution in the state court civil case, Brown Co. Case No. 14-CV-1595, seeking to execute against the following items of the debtor's personal property:

- 2004 Chevrolet 2500
- 2008 Cadillac CTX
- 1996 Ford automobile
- Community Bank Account
- Case Skid Steer
- Kubota Tractor
- John Deere Baler

- Case 1170 Tractor Diesel with cab
- Two (2) Hay Wagons
- Baling Elevator
- Side Rake
- Linken Welder
- Coat 40-40 Tire changer
- Various Hand Tools

A hearing on the petition was scheduled for November 30, 2018.

Also on November 30, 2018, the debtor filed his Chapter 7 bankruptcy petition. As a result, the state court hearing was canceled.

On his Schedule E/F in this bankruptcy case, the debtor listed a non-priority unsecured debt of $772,000.00 owed to CQM Inc., which the debtor described as disputed, adding: "Money judgment against Debtor's former spouse, Brown County Case No. 14 CV 1595."

CQM, Inc. and Ambrosious Development, LLC filed a timely complaint seeking a determination that this debt is non-dischargeable under 11 U.S.C. §§ 523(a)(2) and (a)(15). The matter is now before the Court on the parties' cross-motions for summary judgment.

## THE PARTIES' ARGUMENTS

The plaintiffs allege two causes of action for non-dischargeability, under 11 U.S.C. §§ 523(a)(15) and 523(a)(2)(A). The plaintiffs have moved for summary judgment in their favor on only the cause of action under section 523(a)(2)(A); the debtor has cross-moved for summary judgment in his favor on both causes of action.

### A. Section 523(a)(2)(A)

In the complaint, the plaintiffs base their section 523(a)(2)(A) claim solely on fraud committed by Laurie VandenBush. *See, e.g.*, ECF Doc. No. 1, at ¶ 52 ("The debt springs from the false pretenses, the false representations, and/or the actual fraud of Laurie Vandenbush and has attached to marital property, of which Debtor now owns or is in possession or control of, by stipulation and order and is therefore not dischargeable under 11 U.S.C. § 523(a)(2)(a)."). The complaint does not allege any fraudulent acts committed by the debtor himself.

Likewise, the plaintiffs' brief in support of their motion for summary judgment does not allege that the debtor personally committed any fraud. The plaintiffs' theory under section 523(a)(2)(A), as set forth in their opening brief, is as follows:

(1) Laurie VandenBush stipulated to the entry of a judgment against her on the claim of theft-by-fraud under Wisconsin law;

(2) The elements of theft-by-fraud in Wisconsin are the same as those required to prove non-dischargeability under section 523(a)(2)(A);

(3) The debtor stipulated that the claim against Laurie was a marital obligation and that marital assets were subject to execution to satisfy the judgment;

(4) "Accordingly, the underlying state court judgment and stipulation to theft-by-fraud demonstrate the debt and attachment to marital assets Debtor owns are exempt from discharge."

ECF Doc. No. 20, at 6–7.

Although difficult to follow, the plaintiffs' argument does not reflect a request to except a debt from discharge in the traditional sense—meaning the plaintiffs want to retain the ability to collect the debt as a personal liability of the debtor—but instead, is a request to ensure the ability to collect a judgment from specific assets (those the debtor received in the parties' divorce). *See, e.g.*, ECF Doc. No. 19, at 1 ("Plaintiffs . . . respectfully move the Court for summary judgment entering an order that Plaintiffs' state court judgment against Defendant Darrell Raifield Vandenbush's former spouse, based upon fraud, is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as against the marital assets owned by Defendant following divorce proceedings. Plaintiffs do not seek an order related to a judgment against Defendant personally, but rather, that a debt he stipulated to as a marital obligation and executable on marital assets that are owned by him following divorce proceedings is not dischargeable as to those assets."); ECF Doc. No. 20, at 1 (describing their motion as "requesting a ruling that the state court judgment against Defendant Darrell Raifield Vandenbush's former spouse, based upon fraud, is non-dischargeable as against the marital assets owned by Defendant following divorce proceedings");

*id.* at 8 ("Plaintiffs respectfully request that the Court grant their motion for summary judgment and enter an order that Plaintiffs' state court judgment against Debtor's former spouse is non-dischargeable under 11 U.S.C. § 523(a)(2)(A) as to the marital assets owned by Debtor following divorce proceedings.").

Responding to this "ability to collect" argument, the debtor asserts that the assets against which the plaintiffs seek to collect have been claimed as exempt in this bankruptcy, and it is too late for the plaintiffs to object to those exemptions now. *See* ECF Doc. No. 26, at 2–3 (citing Fed. R. Bankr. P. 4003(b)(1)). As for the non-dischargeability argument, the debtor maintains that the plaintiffs have failed to plead or to provide any evidence of an essential element of a claim under section 523(a)(2)(A): that *the debtor himself* committed any fraud (let alone that he obtained money from the plaintiffs by virtue of that fraud). The complaint does not allege that the debtor personally was involved in any theft or embezzlement, and the debtor has denied by affidavit that he participated in or had any knowledge of Laurie's fraud (a fact the plaintiffs do not dispute). *See* ECF Doc. No. 16. The debtor further asserts that Laurie's fraud cannot be imputed to him, citing *Haig v. Shart (In re Shart),* 505 B.R. 13, 15 (Bankr. C.D. Cal. 2014) and *Bullock v. BankChampaign, NA.,* 133 S.Ct. 1754 (2013). According to the debtor, then, the undisputed material facts establish that he is entitled to judgment as a matter of law on the plaintiffs' claim under section 523(a)(2)(A).

In response, the plaintiffs try a different tack, raising a new theory for relief in their brief opposing the debtor's motion for summary judgment: that the debtor himself engaged in a post-judgment fraudulent transfer scheme by accepting marital assets while disclaiming liability to CQM in the MSA (which the plaintiffs also claim renders the MSA void), and that the debtor's participation in this fraudulent transfer scheme brings the judgment debt within the scope of section 523(a)(2)(A). *See* ECF Doc. No. 23 at 8 ("Debtor's deception in reneging on his stipulation to the judgment in the divorce

proceedings serves independently as grounds to exempt the debt as to him."); *id.* at 12–13 ("Debtor took possession of assets knowing they were encumbered by Plaintiffs' judgment (by his own stipulation), attempted to divest himself of any liability attached thereto through a marital settlement agreement, and thereafter filed for bankruptcy to formally (and improperly) clear title to the assets from the judgment that was entered based upon fraudulent misconduct."); *id.* at 13–14 ("Even though Debtor stipulated that the judgment encumbers marital assets, including his interest in the marital assets, Debtor fraudulently transferred substantially all of the marital assets to himself and disavowed the judgment's attachment thereto in the Marital Settlement Agreement. This constitutes a fraud for which Debtor is directly liable and which exempts the judgment's discharge as against the marital assets that are or were in his possession.").

The debtor challenges the plaintiffs' ability to raise this new "fraudulent conveyance" theory at the summary judgment stage. In any event, says the debtor, the parties' property division *did not* result in a fraudulent conveyance and cannot constitute a basis for an exception to discharge under section 523(a)(2)(A).

**B.     Section 523(a)(15)**

The plaintiffs assert in the complaint that the $772,000.00 judgment debt against Laurie VandenBush is not dischargeable as to the debtor under section 523(a)(15) based on the following allegations:

- The judgment was entered when Laurie Vandenbush and the debtor were married, the debt is a marital obligation, and the debtor stipulated that marital assets were subject to execution to satisfy the judgment.

- In the parties' later divorce, the debtor retained and obtained marital property. In doing so, the debtor attempted to circumvent the stipulation he entered into in the 2014 state court civil case. Specifically, he included language in the MSA "stating that the debt [to the plaintiffs] was not subject to marital property," contrary to the stipulation, order, and judgment in the 2014 state court civil case.

- The MSA "is void to the extent it is contrary to the Stipulation.[1] The discharge exemption[2] statute, or a logical extension thereof, exempts the discharge of Debtor's obligation to Plaintiffs, or the execution of the Judgment against assets he owns or is in possession or control of, because the judgment debt based upon fraud incurred by Debtor as a marital obligation by stipulation and court order."
- "Debtor incurred the debt relating to the [2014 state court civil case] in connection with an order of a court of record and is thus not dischargeable under 11 U.S.C. § 523(a)(15)."

*See* ECF Doc. No. 1, at 8–9 (Compl. ¶¶ 39–46).

In moving for summary judgment on this claim, the debtor asserts that the debt does not fall within the scope of section 523(a)(15) because the MSA assigned the plaintiffs' debt to Laurie, not Darrell, and therefore the debtor did not incur any debt to CQM in the course of the divorce proceeding.

The plaintiffs, in response, raise another new theory, asserting that the debtor's conduct in the parties' divorce created a constructive trust in favor of his former spouse, which somehow brings the debt within the scope of section 523(a)(15). *See* ECF Doc. No. 23, at 14 ("By taking substantially all of the assets and disclaiming the Plaintiffs' debt by allocating it solely to his ex-spouse, Debtor created and the law imposes a constructive trust for the benefit of his ex-spouse upon which Plaintiffs are entitled to enforce their judgment.").

Neither party addressed whether the judgment debt itself qualifies as a debt "to a spouse, former spouse, or child of the debtor," as required by section 523(a)(15), and whether the plaintiffs—who are not included in that category—have standing to raise a claim under that section.

## ANALYSIS

Summary judgment is appropriate if the pleadings and affidavits on file show there are no genuine issues of material fact and the movant is entitled to

---

[1] Taken to its logical end, the plaintiffs' argument is that the January 23, 2016 stipulation required the debtor to remain married to the imprisoned fraudster until the entire $772,000 judgment debt was satisfied, or, undertake divorce only without retaining any property.

[2] The plaintiffs' coining of the term "discharge exemption" only adds to the confused state of the argument. The Court takes the plaintiffs to mean "exception to discharge."

judgment as a matter of law. Fed. R. Civ. P. 56(a) (incorporated by Fed. R. Bankr. P. 7056). Here, the parties do not dispute any genuine issues of material fact—only the legal effect of certain actions that took place in the 2014 state court civil suit and the parties' 2017 divorce, and consequently, the application of sections 523(a)(2)(A) and 523(a)(15) of the Code.

### A. Section 523(a)(2)(A)

#### 1. Dischargeability of the 2014 judgment debt as to the debtor

Section 523(a)(2)(A) excepts from discharge "any debt . . . for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud." This section of the Code proscribes three distinct types of fraudulent conduct: (1) false representations, (2) false pretenses, and (3) actual fraud.

Under section 523(a)(2)(A), a false representation is an express misrepresentation or omission, which can be spoken, written, or demonstrated through conduct. *See Holton v. Zaidel (In re Zaidel)*, 553 B.R. 655, 663 (Bankr. E.D. Wis. 2016) (a debtor's silence regarding a material fact or a failure to disclose pertinent information may be a false representation). In contrast, false pretenses include "implied misrepresentations or conduct intended to create or foster a false impression." *Id.* (internal quotation marks omitted); *see also Attorneys' Title Guar. Fund, Inc. v. Wolf (In re Wolf)*, 519 B.R. 228, 246 (Bankr. N.D. Ill. 2014) (False pretenses may arise "when a debtor, with the intent to mislead a creditor, engages in 'a series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, . . . or understanding of a transaction, in which [the] creditor is wrongfully induced by [the] debtor to transfer property or extend credit to the debtor.'") (internal quotation marks omitted). Whether the allegation is "false representations" or "false pretenses," the elements a creditor must prove to establish its cause of action are the same: (1) the debtor made a false representation or omission, which the debtor either knew was false or made with reckless disregard for the truth; (2) the debtor possessed an intent to

deceive or defraud; and (3) the creditor justifiably relied on the false representation. *Reeves v. Davis (In re Davis)*, 638 F.3d 549, 553 (7th Cir. 2011); *see also Ojeda v. Goldberg*, 599 F.3d 712, 716–17 (7th Cir. 2010).

"Actual fraud" is a different matter. Actual fraud is not limited to instances of fraudulent inducement, and therefore does not require the element of reliance. To prevail on a claim for actual fraud, a creditor need show only that the debtor perpetrated a "positive" fraud against the creditor, meaning an intentional fraud "involving moral turpitude." *See McClellan v. Cantrell*, 217 F.3d 890, 892–94 (7th Cir. 2000) (reliance is necessary only when fraud takes the form of a misrepresentation); *Husky Int'l Elecs., Inc. v. Ritz*, 136 S.Ct. 1581, 1586–87 (2016) (Actual fraud "denotes any fraud that involv[es] moral turpitude or intentional wrong, [and] stands in contrast to implied fraud or fraud in law"; actual fraud encompasses fraudulent conveyance schemes, which "are not an inducement-based fraud.") (internal citations and quotation marks omitted).

Despite their differences, common among all three types of conduct that fall within section 523(a)(2)(A) is the requirement that the *debtor himself* engage in the fraud. The plaintiffs' brief in support of summary judgment recognizes this requirement. *See* ECF Doc. No. 20, at 7 ("In order to demonstrate an exception to discharge under 11 U.S.C. § 523(a)(2)(A), a party objecting to the discharge must show: (1) *the debtor* made material false statements; (2) *the debtor* knew the statements were false; (3) *debtor* intended to deceive the plaintiff; (4) plaintiff justifiably relied on the false statements; and (5) plaintiff was damaged.") (emphasis added) (citing *In re Mergen*, 473 B.R. 743, 747 (Bankr. W.D. Wis. 2012)).

Notwithstanding this recognition, the plaintiffs' complaint and motion for summary judgment, as well as their supporting brief, are based solely on the theft by fraud to which the debtors' ex-wife pled no contest. The debtor points out this critical error in his briefing, to which the plaintiffs puzzlingly respond: "Debtor argues that 11 U.S.C. § 523(a)(2) cannot be used to exempt Plaintiffs'

judgment as against him because he did not perpetrate the fraud. This argument misses the point." ECF Doc. No. 23, at 7. To the contrary, this argument *is* the point. The discharge exception of section 523(a)(2) is meant to except debts that the debtor incurred through *his own* fraudulent conduct.

And as the debtor also points out in his briefing, Laurie VandenBush's fraud cannot be imputed to the debtor for purposes of meeting the debtor-as-actor requirement of section 523(a)(2)(A). *See Haig v. Shart (In re Shart)*, 505 B.R. 13, 14 (Bankr. C.D. Cal. 2014) (imputation of the debtor-husband's fraud to his debtor-wife was "unwarranted under § 523(a)(2)(A) and is hostile to the well accepted principle that Congress intended to enact bankruptcy law 'by which the honest citizen may be relieved from the burden of hopeless insolvency.'") (quoting *Neal v. Clark*, 95 U.S. 704, 709 (1877)); *see also Sullivan v. Glenn*, 782 F.3d 378, 381 (7th Cir. 2015) (proof that a debtor's agent obtained money by fraud does not justify denying the debtor a discharge of the resulting debt, unless it is accompanied by proof which demonstrates or justifies an inference that the debtor knew or should have known of the fraud) (citing *In re Walker*, 726 F.2d 452, 454 (8th Cir. 1984)). The plaintiffs counter with another unsupported statement: "Fraud is not being imputed upon Debtor solely due to his marriage, but by the fact that he stipulated that the resulting judgment constituted a marital obligation and encumbered marital assets." ECF Doc. No. 23, at 7; *see also id.* at 8 ("Imputing the fraud to Debtor was done by his own stipulation and 11 U.S.C. § 523(a)(2) applies to exempt the debt as to him as if he had committed the fraud."). What the plaintiffs fail to explain is how the debtor's stipulation that a judgment against his then-wife could be collected from his then-marital property (1) rendered him personally liable for the fraud of another, and (2) created the underlying debt which the plaintiffs seek to except from discharge—a judgment *solely* against Laurie VandenBush. While the debtor may have agreed that his marital property, in which Laurie had an interest, was available to satisfy the judgment against

Laurie, he never agreed that he was personally liable for that debt or was guilty of fraud. These deficits are fatal to the plaintiffs' complaint.

Perhaps realizing these critical flaws, the plaintiffs try to resurrect their cause of action under section 523(a)(2)(A) by asserting their new "fraudulent conveyance" theory, alleging that the debtor himself engaged in deceptive conduct by "reneging on his stipulation to the judgment in the divorce proceedings," which "serves independently as grounds to exempt the debt as to him," citing *Husky Intern. Electronics, Inc. v. Ritz*, 136 S.Ct. 1581 (2016). *See* ECF Doc. No. 23, at 8–14.

This attempt at revival fails. First, the plaintiffs cannot plead a new factual theory for relief in response to a motion for summary judgment. *See Colbert v. City of Chicago*, 851 F.3d 649, 656 (7th Cir. 2017) ("[A] party may neither amend its pleadings by argument in opposition to summary judgment nor introduce new theories of liability in opposition to summary judgment.") (quoting *Whitaker v. Milwaukee Cty., Wis.*, 772 F.3d 802, 808 (7th Cir. 2014)); *BRC Rubber & Plastics, Inc. v. Cont'l Carbon Co.*, 900 F.3d 529, 541 (7th Cir. 2018) ("Although a plaintiff generally can alter the legal theories asserted in its complaint, it cannot alter 'the factual basis of [its] complaint at summary judgment.'") (quoting *Whitaker*, 772 F.3d at 808).

In any event, this new *Husky*-footed argument cannot state a claim as a matter of law. *Husky* "stands for the narrow proposition that a material misrepresentation by a debtor is not required to support a claim of actual fraud"; it does not do away with the "obtained by" requirement of section 523(a)(2)(A). *In re Vanwinkle*, 562 B.R. 671, 677 (Bankr. E.D. Ky. 2016). As noted above, the undisputed basis for the judgment debt at issue (the $772,000 state court judgment) was Laurie VandenBush's theft by fraud. The debt which CQM seeks to except from discharge was "obtained by" *her* fraud— not the fraudulent transfer CQM now alleges to have occurred later, in connection with the MSA. The plaintiffs have not asked this Court to determine whether the debtor's participation in an alleged fraudulent

conveyance scheme in 2017 created a *new* debt running between the debtor and CQM—itself an issue of state, not bankruptcy, law. (Nor have the plaintiffs requested a determination that any such debt is nondischargeable under section 523(a)(2)(A), and the time to do so has passed.³) *Husky*, therefore, cannot rescue the plaintiffs' complaint. *See, e.g., In re Wilson*, No. 16-30782, 2017 WL 1628878, at *8 (Bankr. N.D. Ohio May 1, 2017) ("[A]ll of the conduct surrounding the real property transfers in this case occurred after the judgment against Defendant in the State Court Action was entered. Any injury (albeit none shown) arising from the alleged fraudulent transfer(s) could not have given rise to the judgment debt at issue."); *In re Vanwinkle*, 562 B.R. at 676 ("The Plaintiffs allege that a post-judgment, fraudulent-conveyance scheme that hinders collection of a preexisting state-law contract debt makes their entire claim non-dischargeable under . . . § 523(a)(2)(A) . . . . But the contract damages on which the State Court Judgment is based all preceded any fraudulent or injurious activities by the Defendant. . . . The Amended Complaint never set forth a cause of action for the post-judgment activities and did not describe the amount of the loss or anything else that could support an argument under *Husky* or existing Sixth Circuit precedent."). Put another way, even if the MSA were declared "void," as the plaintiffs assert it should be, or the debtor had assumed, rather than disclaimed, liability for the debt to CQM in the parties' MSA, the underlying facts remains the same: the judgment debt owed to CQM was not *obtained by* any fraud *committed by the debtor*. For this

---

³ *See, e.g., Centier Bank v. Young (In re Young)*, 428 B.R. 804, 811–12 (Bankr. N.D. Ind. 2010) (new causes of action raised in proposed amended complaint filed after Rule 4007(c) deadline were deemed time-barred, and thus plaintiff was denied leave to amend, because the transactions and facts referenced in the amended complaint were "entirely different, in terms of both temporal and substantive elements" than those included in the original complaint); *Crossroads Bank v. Simmons (In re Simmons)*, No. 11-14547, 2013 WL 4400425, at *2 (Bankr. N.D. Ind. July 18, 2013) (proposed amendment filed after Rule 4007(c) deadline was deemed time-barred and denied on futility grounds because the new allegations were not sufficiently related to the fraudulent transfers upon which the original complaint was based: "[t]he amendment would not be a variation on the original theme, based upon the same core of facts; but something entirely new, based upon materially different facts") (citing *New Century Bank v. Carmell (In re Carmell)*, 424 B.R. 401, 412–13 (Bankr. N.D. Ill. 2010)).

reason, the debt owed by the debtor to CQM due to the state court judgment—to the extent any exists[4]—does not fit within the scope of section 523(a)(2)(A).

### 2. Dischargeability vs. collectability of the judgment debt

The substance of the plaintiffs' complaint, as well as their request for relief, focuses more on the collectability of their judgment against the former marital property of the debtor than the dischargeability of the debt as to the debtor himself. This attempt to preserve a right to collect *against* certain property—rather than a right to collect *from* the debtor personally—is more analogous to a cause of action under 11 U.S.C. § 524(a)(3) than § 523(a)(2)(A).

Section 524(a)(3) of the Code, which is commonly referred to as the "community discharge" provision and applies if one spouse in a community property state has received a discharge, protects after-acquired community property of the discharged spouse against community claims incurred by the non-filing spouse—*unless* the claim is one that would have been excepted from discharge in a hypothetical bankruptcy case filed by the non-filing spouse on the same day:

> A discharge in a case under this title . . . operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, property of the debtor of the kind specified in section 541(a)(2) of this title [community property] that is acquired after the commencement of the case, on account of any allowable community claim, except a community claim that is excepted from discharge under section 523, 1228(a)(1), or 1328(a)(1), or that would be so excepted, determined in accordance with the provisions of sections 523(c) and 523(d) of this title, in a case concerning the debtor's spouse commenced on the date of the filing of the petition in the case concerning the debtor, whether or not discharge of the debt based on such community claim is waived.

11 U.S.C. § 524(a)(3).

---

[4] The debtor disputes that he owes a debt to CQM. CQM holds a state court judgment against Laurie only—not against the debtor. And, as noted above, the plaintiffs have not asked this Court to determine whether the debtor's participation in the alleged fraudulent conveyance scheme in 2017 gave rise to liability for a new, separate debt owed by the debtor to CQM.

Had the VandenBushes remained married, the plaintiffs may have been able to succeed on a cause of action under § 524(a)(3).[5] But the parties' later divorce rendered this provision inapplicable: Laurie is no longer Darrell VandenBush's spouse, and there can be no after-acquired community property from which the plaintiffs may be able to collect.

Moreover, the debtor has exempted most of the property from which the plaintiffs seek to collect. The plaintiffs did not object to those exemptions (although they recite potential bases for an objection in their responsive briefing, *see* ECF Doc. No. 29, at 3), and it is too late to do so now, *see* Fed. R. Bankr. P. 4003(b)(1). The plaintiffs' ability to collect now is limited to their eligibility to share in a pro rata distribution of any non-exempt assets the Chapter 7 trustee is able to administer for the benefit of unsecured creditors. *See* 4 Collier on Bankruptcy § 522.08 n.7 (16th ed. 2019) ("exempt property is generally protected by section 522(c) after discharge and will not be subject to execution based on a prepetition claim"—even one "that was not discharged because of fraud pursuant to section 523(a)," subject to exceptions not relevant here); *see also Valley Nat'l Bank of Ariz. v. LeSueur (In re LeSueur)*, 53 B.R. 414, 417 (Bankr. D. Ariz. 1985) (under section 524(a)(3), only "*nonexempt*, post-petition community property and the separate property of the spouse whose

---

[5] The debtor disputes that section 524(a)(3) would apply even if the parties still were married, because Laurie VandenBush's debt is not a "community claim." *See, e.g.*, ECF Doc. No. 26, at 3 ("Under Wisconsin law, debts owed as a result of one spouse's embezzlement are not marital debts and the innocent spouse is not liable for them as a marital debt.") (citing *Curda-Derickson v. Derickson*, 2003 WI App 167, ¶¶ 18–20, 668 N.W.2d 736 (restitution order imposed as part of husband's criminal conviction for embezzlement during his marriage was not a marital debt, and therefore creditor was limited to collecting from only the husband's individual property and his interest in marital property; the statutory presumption that obligations incurred by a spouse during marriage are "incurred in the interest of the marriage or the family," and thus are marital debts that may be satisfied from all marital property, *see* Wis. Stat. §§ 766.55(1) & (2)(b), does not apply to debts resulting from torts committed by the other spouse during marriage, which are individual debts that "may be satisfied from the property of that spouse that is not marital property and from that spouse's interest in marital property," Wis. Stat. § 766.55(2)(cm))). *Compare Kelley v. Dahle–Fenske (In re Dahle-Fenske)*, 525 B.R. 912, 918 (Bankr. E.D. Wis. 2015) (debt incurred by debtor-wife during marriage without her husband's knowledge was a "community claim" because the debtor failed to rebut the presumption that the debt was incurred in the interest of marriage or family, and the debt could be satisfied from her husband's interest in community property).

actions led to nondischargeability" could be liable for the debt owed to the creditor) (emphasis added); *In re Schmiedel*, 236 B.R. 393, 398 (Bankr. E.D. Wis. 1999) ("The discharge injunction covers after-acquired community property, but the statute makes no mention of community property that was owned before the bankruptcy and passes through the bankruptcy estate as exempt property. . . . Any nonexempt community property would be liquidated and distributed, and all that passes out of the estate is exempt community property. Exempt property, with exceptions not applicable here, is not available for recovery for discharged debts. 11 U.S.C. § 522(c).").

In short, to the extent the factual allegations in the plaintiffs' complaint were meant to invoke section 524(a)(3), rather than section 523(a)(2)(A), they also fail to state a claim as a matter of law. The plaintiffs have not demonstrated any basis to continue collecting against the debtor's former marital property (now included in his bankruptcy estate) outside of the confines of this bankruptcy case.

For all these reasons, the debtor is entitled to judgment as a matter of law on the plaintiffs' cause of action premised on section 523(a)(2)(A), and the Court will grant the debtor's motion for summary judgment on that claim.

### 3. Section 523(a)(15)

The debtor also seeks summary judgment in his favor on the plaintiffs' cause of action under 11 U.S.C. § 523(a)(15). Section 523(a)(15) of the Code provides:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—
>
> . . .
>
> (15) to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) [a domestic support obligation] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

11 U.S.C. § 523(a)(15).

To prevail on a claim under section 523(a)(15), a creditor must prove that the debt at issue (1) is to a spouse, former spouse, or child of the debtor; and (2) was incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement or divorce decree. In asserting that their judgment debt is excepted from discharge under section 523(a)(15), the plaintiffs apparently read the first element out of the statute. The plaintiffs are not spouses, former spouses, or children of the debtor—the categories of individuals that section 523(a)(15) is meant to protect. *See In re Strom*, 569 B.R. 494, 497 (Bankr. W.D. Wis. 2017) ("The reason for the tempering of the policy [whereby the Bankruptcy Code's exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor] in divorce-related obligations is the determination of Congress that sections 523(a)(5) and (15) express intent to protect former spouses in matters of alimony, maintenance, support and divorce-related obligations despite the Code's fresh start policy."). Nor does the judgment debt to CQM satisfy the second required element of a cause of action under section 523(a)(15): as a pre-existing liability, it is not a debt that the debtor incurred in the course of his divorce proceeding.

Finally, to the extent the plaintiffs' new "constructive trust" theory—that the debtor's conduct in the parties' divorce by retaining marital assets while disavowing the debt to CQM somehow created a constructive trust in favor of, and thus a debt owed to, his former spouse—was properly before the Court (*see Colbert*, 851 F.3d at 656; *BRC Rubber & Plastics*, 900 F.3d at 541) or had any merit, the plaintiffs lack standing to raise it:

> *The exception [of section 523(a)(15)] applies only to* **debts** *incurred in a divorce or separation that are owed to a spouse or former spouse, and can be asserted only by the other party to the divorce or separation. If the debtor agrees to pay marital* debts *that were owed to third parties, those third parties do not have standing to assert this exception, since the obligations to them were incurred prior to the divorce or separation agreement. It is only the obligation owed to the* **spouse** *or former* **spouse**—*an obligation to hold the* **spouse** *or former* **spouse** *harmless—which is within the scope of*

*this section.* See In re MacDonald, 69 B.R. 259, 278 (Bankr. D.N.J. 1986).

*In re Strom*, 569 B.R. at 498 (emphasis in original) (quoting 140 Cong. Rec. H10752, H10770 (daily ed. Oct. 4, 1994) (statement of Chairman Brooks)).

For these reasons, the plaintiffs' claim under section 523(a)(15) also fails, and the debtor is entitled to judgment as a matter of law on this cause of action. The Court therefore will grant the debtor's motion for summary judgment as to this claim.[6]

## CONCLUSION

For the reasons set forth above, the Court concludes that there is no genuine dispute as to any material facts and that the debtor is entitled to judgment as a matter of law on both causes of action alleged in the plaintiffs' complaint.

The Court will enter a separate order consistent with this decision.


Dated: February 7, 2020

By the Court:

Beth E. Hanan
United States Bankruptcy Judge

---

[6] The debtor's brief in support of his motion for summary judgment, which relies solely on Federal Rule of Civil Procedure 56, is captioned as a "brief in support of defendant's motion to dismiss, or, in the alternative, motion for summary judgment." The debtor's brief lacks any further discussion of an alternative "motion to dismiss" or the standards of Civil Rule 12. Similarly, the debtor's brief includes a one-sentence request for a judgment of attorneys' fees under Bankruptcy Rule 9011. The Court makes no ruling on the debtor's undeveloped requests, which are not properly before the Court. *See Tyler v. Runyon*, 70 F.3d 458, 464 (7th Cir. 1995) ("[A] litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority, forfeits the point.") (internal quotation marks omitted).